UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| THOMAS KARMATZIS, ) | |
| ) | Case No. 11-CV-2222 |
| Plaintiff, ) | |
| v. ) | |
| MICHAEL HAMILTON, et al., ) | |
| Defendants. ) | |

**OPINION**

On June 28, 2012, Magistrate Judge David G. Bernthal filed a *sua sponte* Report and Recommendation (#71) in the above cause. The Magistrate Judge recommended that this court is bereft of subject-matter jurisdiction to hear the case. After a careful and thorough *de novo* review, this court agrees with and accepts the Report and Recommendation of the Magistrate Judge. Accordingly, this case is DISMISSED for lack of subject-matter jurisdiction.

Further, Plaintiff's Motion for Preliminary Injunction (#23), Motion to Amend (#61), and Motion for Status (#72) are DISMISSED as MOOT.

**FACTS**

Plaintiff alleges that during and before the incident giving rise to the present suit, he had been receiving medical benefits from the VA. (#1 p.5). On March 17, 2009, Plaintiff underwent back surgery at the Indianapolis VA Medical Center. (#1 Ex. 1 p. 6). Plaintiff experienced

significant complications during and after the surgery, which required the resection of the right side of his colon and the removal of parts of his small intestine. (#1 p. 6). He avers that he "only went in to get my spine double fused and ended up losing over half my bowels and the right side of my colon."[1] (*Id.*). Plaintiff further alleges that due to the need to recover from the complications, he was repeatedly hospitalized from time to time between March 16, 2009 and April 10, 2010. (#1 p. 7).

On March 9, 2010, Plaintiff filed a VA Form 21-526 Application for Compensation and/or Pension. (#78, Ex. 2). In the application, he states that "[d]uring a fusion of L4, L5, S1 on my spine, all the mistakes [have] caused the right side of my colon [and] six places [on my] small intestine [to be] removed and more to be removed [] along with my gallbladder, none of this was my fault. I had none of these problems when I entered the hospital for back surgery. These were all the VA's mistakes [that] has ruined my life. I'm disfigured and permanently disabled[.] This has already cost me a year in the hospital." (#78 ex. 2).

In a letter dated June 23, 2010, Defendant Department of Veterans Affairs sent Plaintiff a letter informing him that the VA Illiana Health Care System had determined that Plaintiff was ineligible for healthcare benefits. (#1; #78). The letter stated, among other things, that "[t]he evidence we reviewed shows that you have no wartime service. Your service records show you served on active duty from September 5, 1979 to November 30, 1979." (*Id.*) Further, the letter also states: "Based on review of your DD214, it has been determined that you <u>served active duty</u>

---

[1] For the sake of brevity and clarity, this court has corrected Plaintiff's voluminous spelling mistakes in this Order and Opinion without additional notation. Where his grammatical intent is clear, corrections have been inserted with brackets. For a verbatim transcription of the text of his filings, reference may be made to those documents.

for training purposes only and you are not eligible for VA medical care." (*Id.*) (emphasis in original.) As a result, Plaintiff was no longer able to receive medical care through the Department of Veterans Affairs. (*Id.*)

Plaintiff filed a Notice of Disagreement appealing the denial of his benefits on July 25, 2011. (#1 Ex.1 p.9; #78 Ex. 4). Plaintiff avers that "[t]his issue is still on going and has no regards to the complaint that is being filed for being cut off immediately from medical service that endangered the life and well-being of the plaintiff." (#1 p. 4). Plaintiff further notes that "as for the benefit issue of 15 years of being at the VA and request for compensation a Notice of Disagreement has been filed to the Department of Veterans Affairs but these matters are separate from this." (#73 p. 4).

In his application for compensation, VA Form 21-526, Plaintiff claimed that he entered active service on September 5, 1979, and left on August 12, 1985 (#78 Ex.1 p.4). However, Defendant VA provided declarations showing that Plaintiff enlisted for active full time duty with the U.S. Army on September 5, 1979, and was enrolled in basic training between September 5, 1979 and November 30, 1979, whereupon he was discharged from active duty while still in basic training. (#76 ¶¶ 1-3; #82 p.6 (Defendant's DD214)). Plaintiff provided his own DD214, which indicates that he entered active duty on September 5, 1979 and was honorably discharged on November 30, 1979 pursuant to the Trainee Discharge Program, the reason given as "marginal or nonproductive." (#82 p.6). For this period, his MOS was listed as 05C00 -- "Basic Trainee". On June 18, 1983, Plaintiff was ordered to active duty for training for 60 days to attend OSUT (One Station Unit Training, a combination of basic combat training and advanced individual training) for MOS 13b, cannon crewmember. Finally, Plaintiff's DD214 indicates that his Reserve

Obligation Termination Date was August 12, 1985.

## PROCEDURAL HISTORY

On September 19, 2011, Plaintiff filed his initial complaint (#1) along with a petition to proceed *in forma pauperis* (#2) and a motion to appoint counsel (#3). Plaintiff alleges that as a result of his "filing a complaint on 3-31-10 for the happenings from the surgery on 3-17-09 leaving me hospitalized and disabled is the reason they instantly stopped all services to include life threatening medications and life-threatening treatments;" "the Veterans Affairs Administration negligently and unconstitutionally [infringed] my rights and endanger me and threatened my life by immediately stopping all medications and treatments;" and thus, "because of the withdrawal changed my ways of thinking and caused actions out of myself that caused me to break the law and get an even longer sentence because of the major withdrawal from all the medications from the injuries that the VA inflicted on me." (#1 p. 8).

On October 13, 2011, Magistrate Judge Bernthal allowed Plaintiff to proceed without prepayment of fees (#14) but denied the motion to appoint counsel (#15). On June 28, 2012, Magistrate Judge Bernthal issued a *sua sponte* Report and Recommendation, recommending that this court dismiss the case due to a lack of subject-matter jurisdiction (#74). On July 11, 2012, Plaintiff filed an objection (#73); on July 13, 2012, Defendant VA filed a motion to file additional evidence (#74); and on July 24, 2012, Defendant VA filed its Response to Plaintiff's Objection, along with a Motion for Summary Judgment (#76) and with four declarations (#77-#80). On July 26, 2012, Plaintiff filed an amendment to his objection (#82). On August 1, 2012,

Defendant VA filed its Response to Plaintiff's amendment (#84). On August 8, 2012, Plaintiff filed a Response to Defendant VA's Motion for Summary Judgment (#85).

## ANALYSIS

As a preliminary matter, this court must determine whether it has subject-matter jurisdiction to hear the case. If a federal district court does not have subject-matter jurisdiction, it is powerless to entertain the merits of the case and instead must dismiss it. Fed. R. Civ. P. 12(h)(3); *see also Craig v. Ontario Corp.*, 543 F.3d 872, 875 (7th Cir. 2008) ("Subject-matter jurisdiction is so central to the district court's power to issue any orders whatsoever that it may be inquired into at any time, with or without a motion, by any party or by the court itself.")

As Magistrate Judge Bernthal correctly noted in his Report and Recommendation (#73), the critical threshold issue in the instant case is whether this court has subject-matter jurisdiction in light of the Veterans' Judicial Review Act of 1988, 38 U.S.C. § 511 (hereinafter "VJRA"). The VJRA's jurisdictional scheme precludes district courts from reviewing challenges to individual benefits decisions such as denials or delays of benefits. *Lewis v. Norton*, 355 F. App'x 69, 70 (7th Cir. 2009) (collecting cases).

A brief history of federal judicial review of VA decisions is instructive. 38 U.S.C. § 211 was the pre-VJRA equivalent to present-day § 511. The text of § 211 read, in pertinent part:

> [T]he decision of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

38 U.S.C. § 211 (1982). The plain language of § 211 bars any federal court review of a VA decision. In 1974, the Supreme Court analyzed the jurisdictional implications of § 211 and expressed concern that a statute that wholly and completely precluded federal courts from deciding its constitutionality would raise serious questions concerning the constitutionality of the statute itself. *Johnson v. Robison,* 415 U.S. 361, 366 (1974). Because courts must construe statutes so as to render them constitutional, the only alternative is that when a plaintiff alleges a serious constitutional violation has occurred, the allegations must become open to judicial review regardless of any door-closing provisions. *Id*.

In *Marozsan*, the plaintiff injured his back while on active duty in the Navy in 1949. *Marozsan v. United States*, 852 F.2d 1469 (7th Cir. 1988). He filed several claims for veterans' benefits, all of which were denied until the Board of Veterans' Appeals rated him as 20% disabled in 1981. When he sought to increase his rating, the Board refused to do so. Marozsan then filed an action asserting that the VA employed an arbitrary quota system in processing claims, thereby denying him due process of law. The district court cast his claim as a challenge to the VA's determination of his benefit level and therefore a claim seeking money from the Treasury. Accordingly, that court held that it was prohibited from exercising jurisdiction over the claim with respect to the decision of the V.A. regarding his entitlement to V.A. disability benefits. *Marozsan v. United States*, 635 F. Supp. 578 (N.D. Ind. 1986). Following the reasoning in *Johnson v. Robison*, the Seventh Circuit reversed and allowed him to proceed with his case, holding that because § 211's door-closing provision completely precluded judicial review, rather than merely channeling it, at least one judicial forum—*viz*., the federal judiciary—must remain

open in order to render § 211 constitutional. *Marozsan*, 852 F.2d at 1478-79; *see also Murrhee v. Principi*, 364 F. Supp. 2d 782, 787-89 (C.D. Ill. 2005).

However, Congress enacted the VJRA in 1988, replacing § 211 with § 511. Pub. L. No. 100-687, 102 Stat. 4105 (1988). Section 511 read, in pertinent part:

> (a) The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

38 U.S.C. § 511. These changes were critical because, as the Seventh Circuit explained,

> [t]he VJRA establishes a framework for the adjudication of veterans' benefits claims. A veteran must first file a claim for benefits at a regional VA office that decides all questions of law and fact as they relate to the claim. Veterans may appeal unfavorable benefits decisions to the Board of Veterans' Appeals, [38 U.S.C.] § 7104(a), then to the Court of Appeals for Veterans Claims, *id.* § 7252(a), then to the Federal Circuit, *id.* § 7292(c), and finally to the Supreme Court, *id.* § 7291.

*Lewis v. Norton*, 355 F. App'x 69, 70 (7th Cir. 2009). In this way, § 511 does not preclude judicial review of claims, but merely channels judicial review of those claims.

Thus, the question becomes: Did the VJRA, with its addition of judicial review in the Federal Circuit and Supreme Court, change the scope of constitutional review available to plaintiffs in the federal district courts? More specifically, over what kinds of constitutional claims does this court have subject-matter jurisdiction, if any? As this court has previously noted, the question of subject-matter jurisdiction generally arises in the context of three types of claims: facial constitutional challenges to the statute itself, constitutional challenges to the VA's procedures or regulations, and fact-bound investigations of benefits claims. *Murrhee*, 364 F.

Supp. 2d at 787. Although no case could be found where the Seventh Circuit directly addressed this issue on all fours, this court previously decided that because Congress intended to channel judicial review to the Federal Circuit in § 511, rather than completely precluding it, the subject-matter jurisdiction of this court has been narrowed down to the single case where a plaintiff makes a facial constitutional challenge to the veterans' benefits statutes themselves. *Murrhee,* 364 F. Supp. 2d at 789; *cf. Czerkies v. U.S. Dep't of Labor*, 73 F.3d 1435, 1439 (7th Cir. 1996) ("The circuits are in agreement: door-closing statutes do not, unless Congress expressly provides, close the door to constitutional claims, provided that the claim is colorable and the claimant is seeking only a new hearing or other process rather than a direct award of money by the district court.")

      The "facial challenge" test has been adopted by the Second and Sixth Circuits. *Larrabee v. Derwinski*, 968 F.2d 1497, 1501 (2d Cir. 1992) ("Although district courts continue to have jurisdiction to hear *facial* challenges of legislation affecting veterans' benefits, other constitutional and statutory claims must be pursued within the appellate mill Congress established in the VJRA.") (citations and quotations marks omitted; emphasis in original); *Beamon v. Brown*, 125 F.3d 965, 972-73 (6th Cir. 1997) ("[D]istrict court jurisdiction over facial challenges to acts of Congress survived the statutory revisions that established the CVA.") *But see also id*. at 974 ("[W]e find that Congress intended to preclude district court jurisdiction over VA decisions relating to benefits claims, including decisions of constitutional issues.") *and Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1034 (9th Cir. 2012) (explaining the apparent dichotomy in *Beamon*.)

The Ninth Circuit came to a similar conclusion in *Veterans for Common Sense v. Shinseki*. There, two nonprofit organizations challenged VA procedures that allegedly result in delayed care and delayed adjudication and resolution of disability compensation claims. 678 F.3d 1013, 1017 (9th Cir. 2012) (en banc). Not only were the plaintiffs not challenging a specific VA decision, but as they were organizations, they also did not have an actual benefits decision that could have been litigated through the Veterans Court. Instead, they challenged the absence of system-wide procedures allegedly necessary for due process. Accordingly, the court held that it had subject-matter jurisdiction as it was the only judicial forum wherein relief could be granted. *Id*. at 1035. Although the Ninth Circuit emphasized that it was not deciding whether an individual seeking benefits would be barred by § 511 from bringing a facial constitutional claim, the court was clearly persuaded by the fact that plaintiffs not only had no administrative recourse but also were challenging the facial validity of certain administrative regulations. *Id*. at 1034-35.

Here, as best as this court can make out, the main thrust of Plaintiff's complaint is that the VA terminated Plaintiff's healthcare benefits in retaliation for filing a claim for compensation, and the VA subsequently denied him any opportunity to appeal. Plaintiff alleges that, up until June 2010, he was still seeking frequent medical care at the VA Medical Center "until they refused to treat me any longer. I wasn't given any medications or treatment after my last visit to my primary care provider on 6-2-10. I went through major medical problems and withdrawal [that caused] more major medical problems . . . ." (#1 p. 7). Plaintiff seeks damages of $25 million dollars and the reinstatement of medical benefits. (#1 p. 9).

In his complaint, Plaintiff alleges that "there is no grievance process that was available at the VAs in any place." (#1 p. 4), and mentions in passing that the VA "negligently and

unconstitutionally [violated] my rights" (#1 p. 8). Furthermore, Plaintiff's Objection to the Report and Recommendation clarifies his claims, specifically raising for the first time his assertion that Defendant VA violated his First, Fifth, Eighth, and Fourteenth Amendment rights. (#73). He further states that "this matter is not about 15 years of benefits being immediately stopped for unconstitutional reasons but for major violations in the plaintiff's rights . . . ." (#73, p. 3).

Regarding his First Amendment claim, Plaintiff asserts that the V.A. acted with "deliberate indifference [by] throwing him out of the V.A. after 15 years of being eligible" in "retaliation for filing for compensation." (#73). Plaintiff clearly does not and cannot allege that his freedoms of speech, assembly, association, or religion have been violated; but, read loosely, Plaintiff may be alleging that he was not allowed to petition the government for the redress of grievances. This is a valid First Amendment concern. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). However, he does not make a facial challenge to the constitutionality of any specific regulation or statute, only that the VA decision was not fair or according to regulation.

Plaintiff's Eighth Amendment claim is entirely without merit. The protections of the Eighth Amendment are afforded only to individuals where the state has already secured a formal adjudication of guilt—that is to say, prisoners within the scope of the criminal system. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Ingraham v. Wright*, 430 U.S. 651, 663-67 (1977). *See also Ryan v. Cleland*, 531 F. Supp. 724, 732 (E.D.N.Y. 1982) (holding, albeit before the enactment of the VJRA, that an individual cannot be treated as a "*de facto* prisoner*" of the VA medical system, entitled to Eighth Amendment protection, simply because he or she lacks the finances to seek medical care elsewhere). While Plaintiff is currently

incarcerated by the Illinois Department of Corrections, he does not and cannot allege that he was a prisoner of the VA at the time those injuries occurred. Therefore, Plaintiff fails to make out a plausible Eighth Amendment claim even under the liberal *pro se* pleading standard, much less alleging a facial challenge. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

Regarding his Fifth and Fourteenth Amendment claims, Plaintiff claims that 1) "there is no grievance process that was available at the VAs in any place" (#1 p. 4); and 2) his right to due process was violated because "all medical treatments and medicines were stopped immediately [and I was] not given a chance to have them restarted." (#73, p.2). Unlike his First Amendment claim, Plaintiff has unwittingly stumbled into suggesting that there was *no* grievance process available to him at any VA office. If true, this would indeed be a dramatic violation of his right to procedural due process and a facial constitutional challenge akin to the one brought in *Veterans for Common Sense v. Shinseki*. Procedural due process guarantees notice and an opportunity to be heard before permanently depriving an individual of a protected property interest. *Somerset House, Inc. v. Turnock*, 900 F.2d 1012, 1015 (7th Cir. 1990); *Mathews v. Eldridge*, 24 U.S. 319, 333 (1976). But in the same breath, Plaintiff alleges that "this issue [of denial of compensation] is still ongoing and has no regards to the complaint that is being filed for being cut off immediately from medical services," (#1 p. 4) and that "as for the benefit issue of 15 years of being at the VA and request for compensation a Notice of Disagreement has been filed to the Department of Veterans Affairs but these matters are separate from this." (#73 p.4). It is clear, by Plaintiff's own allegations, that an appeal process was available to him, that he has availed himself of that process, and that the process was still ongoing, at least, when he filed the complaint.

This court is charged with construing a handwritten *pro se* complaint liberally and affording a *pro se* plaintiff a certain generosity in parsing the relief demanded so as to survive the procedural pitfalls that a lay person could not be expected to avoid. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Czerkies v. U.S. Dept. of Labor*, 73 F.3d 1435, 1438 (7th Cir. 1996).

However, where subject-matter jurisdiction is in dispute, this court must also look beyond the four corners of the complaint to discern the *actual injury* claimed by the plaintiff. *Lewis v. Norton*, 355 F. App'x 69, 70 (7th Cir. 2009). "Courts do not acquire jurisdiction to hear challenges to benefits determinations merely because those challenges are cloaked in constitutional terms." *Czerkies,* 73 F.3d at 1439.

This case is a claim for damages and benefits cloaked in constitutional terms. Plaintiff seeks monetary damages and equitable relief in the form of having his benefits resumed. This court has searched Plaintiff's filings for any indication of a facial challenge to the constitutionality of a statute or regulation and has found nothing but naked contentions that the VA terminated his medical benefits in retaliation for filing a compensation claim and that he was subsequently barred from appealing the VA's denial of his compensation claim. Section 511 bars this court from hearing Plaintiff's first allegation, and he has pled himself out of court on the second.

IT IS THEREFORE ORDERED THAT:

(1) The Report and Recommendation (#71) is accepted by this court.

(2) Plaintiff's Complaint (#1) is DISMISSED without prejudice. This case is terminated.

(3) All remaining outstanding motions are dismissed as MOOT.

ENTERED this 30th day of August, 2012

**s/ Michael P. McCuskey**

MICHAEL P. McCUSKEY
UNITED STATES DISTRICT JUDGE